[No. 16975.  Department Two.  May 13, 1922.]

LORENZ LINSLER *et al.*, *Appellants*, v. BOOTH
UNDERTAKING COMPANY,
*Respondent.*[1]

NUISANCES (2)—WHAT CONSTITUTES—UNDERTAKING ESTABLISH-
MENT—AUTHORITY TO MAINTAIN—EFFECT OF CITY ORDINANCE. An un-
dertaking establishment, within the district permitted, and thus
authorized, by a city ordinance passed in the exercise of the police
power, is not a nuisance, within Rem. Comp. Stat., § 9914, defining
a nuisance as the doing of an "unlawful" act, where the ordinance
was not unreasonable.

Appeal from a judgment of the superior court for
King county, Brinker, J., entered October 20, 1921, in
favor of the defendant, dismissing an action for an
injunction, tried to the court.  Affirmed.

*Henry W. Pennock* and *James R. Gates,* for appel-
lants.

*Reynolds, Ballinger & Hutson,* for respondent.

MAIN, J.—The purpose of this action was to restrain
the defendant from conducting an undertaking estab-
lishment, claiming that it constituted a nuisance.  The
trial resulted in a judgment of dismissal, from which
the plaintiffs appeal.

The respondent is a corporation and is engaged in
the undertaking business upon the premises known
as 1422 Bellview avenue, in the city of Seattle.  A
school district, and the owners of adjacent and nearby
property are the appellants.  The undertaking estab-
lishment is within the district where it may be located
under an ordinance of the city.  The business is con-
ducted on Bellview avenue and is in the first block
south of Pike street, which is a business street.  Be-

[1]Reported in 206 Pac. 976.

tween the business house on the southeast corner of
the intersection of Pike street and Bellview avenue
and the undertaking establishment there is one resi-
dence.   To the south the property is used for resi-
dence purposes.   The appellants, Linsler, own prop-
erty adjacent to the undertaking place on the south
and occupy it as a residence.   The street at the rear of
respondent's property is a narrow street and known as
Crawford Place.   The Summit school, one of the large
grade schools of the city, is on the east side of this
street.   The ordinance defining the limits within which
undertaking establishments may be conducted fixes the
south limit thereof as coinciding with the south line
of the respondent's property, upon which the business
is being conducted, and, as already stated, the busi-
ness is within the limits prescribed by the ordinance.
Upon the trial much of the evidence which was offered
by the appellants was rejected and offers of proof
were made.   In considering the case the offers of proof
will be considered as evidence in the case.   There is
no evidence that the business was conducted in a negli-
gent or improper manner.   The respondent in object-
ing to the testimony was careful to state that its ob-
jection did not go to any evidence which showed or
tended to show negligent or improper operation of
the business.

The undertaking business, it will be admitted, depre-
ciates the value of nearby property for residence pur-
poses, and also brings into the homes of those living
near by an element of discomfort and lack of repose
such as would have a depressing effect upon the mind
of the average person.

The question is whether or not the existence of the
undertaking establishment at the place mentioned con-
stitutes a nuisance.   That such a business is not a

nuisance *per se* is well established and no contention here is made otherwise. The ordinance referred to was manifestly passed in the exercise of the police power given to the city by the constitution and the statutes in aid thereof. Section 11, of art. 11, of the constitution of this state provides that any city may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws. This is a direct delegation of the police power as amply within its limits as that possessed by the legislature. So long as the subject-matter is local and the regulations reasonable and consistent with general laws it is not necessary that it be supported by legislative sanction. In *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462, it was said:

"The state constitution, § 11 of article 11, provides: 'Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.'

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws."

It is well settled that property is held subject to the exercise of the police power, and that the provisions of the constitution forbidding laws the effect of which is to take or damage property have no application in such cases. In *Odd Fellows' Cemetery Ass'n v. City & County of San Francisco*, 140 Cal. 226, 73 Pac. 987, it was said:

"It is settled law that all property is held subject to the exercise of police power, and that the provisions of the constitution forbidding laws impairing the obligations of contracts, and declaring that property shall not

be taken without due process of law, have no application in such cases. (Citing numerous authorities.)''

It thus appears that the undertaking establishment here in question was authorized by an ordinance (Ordinance Nos. 36,032, 40,637), which ordinance is controlling unless it be inconsistent with some general law. The appellants claim that it is inconsistent with § 9914 of Remington's Compiled Statutes, which provides:

"Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.''

It will be noticed by this statute that a nuisance consists in doing an act which is unlawful and which injures or endangers the comfort, repose, health or safety of others. The business complained of, being conducted in pursuance of the ordinance which has the force of a general law, was not made unlawful by this statute. The statute applies to the unlawful doing of an act. If the statute were given the effect of making an undertaking business a nuisance when placed in close proximity to the residence of others it would deprive the city of its right to exercise of police power in this regard where respondent's property was affected thereby. It is not claimed in this case that the ordinance was unreasonable and therefore should be set aside as being such. The case of *Densmore v. Evergreen Camp No. 147, W. O. W.*, 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608,

is distinguishable. There, there was no ordinance of the city of Everett authorizing the undertaking establishment in the place where it was conducted, while here, as already pointed out, the respondent's business is located within the district prescribed by the ordinance for such purpose. That may be a nuisance which exists without authority of law, yet not a nuisance if so authorized. In *Transportation Co. v. Chicago,* 99 U. S. 635, it was said:

"A legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded."

So here, it may be admitted, but not decided, that, in the absence of the ordinance, the undertaking establishment would constitute a nuisance and would be controlled by the *Densmore* case, *supra.* The appellants cite a number of authorities, and the two which they claim to be most closely in point will be considered· and distinguished. In the case of *Baltimore & Potomac Railroad Co. v. Fifth Baptist Church,* 108 U. S. 317, 2 S. Ct. 719, the defendant, the railroad company, by authority of Congress, had been permitted to bring its tracks within the limits of the city of Washington, D. C., and to construct shops and engine houses therein. The railroad company erected the engine house and machine shop on a parcel of land immediately adjoining the Fifth Baptist Church property. The operation of the engine house and machine shop seriously interfered with the use of the property for church services. It is there held that the machine shop and engine house constituted a nuisance of which the church had a right to complain. The distinction

between that case and the present is this: The railroad company's engine house and machine shop was not conducted by authority which arose out of the police power. It was more in the nature of a special privilege granted to the company. The other case is that of *Woodruff v. North Bloomfield Gravel Mining Co.,* 18 Fed. 753. There the mining company was conducting its operations in the state of California and was discharging mining debris, such as rocks, pebbles, gravel and sand in large quantities into the waters of the Yuba river, whence it was carried down by the current and by floods into the lower portion of that stream, and into the Feather and Sacramento. The debris thus discharged filled up the natural channel of the Yuba and also the Feather, below the mouth of the Yuba, to a depth of fifteen feet or more, and the sand and gravel was carried beyond the banks of the Yuba and destroyed the farms of the riparian owners on either side over a space of two miles in width. The mining company sought to justify its acts by legislation of Congress recognizing and regulating mining upon the public lands of the United States. It was there held that the acts of the mining company could not be justified, even if expressly authorized, because such legislation would deprive the property owners of their property without due process of law, or would take or damage their property for an alleged public use without compensation. Likewise, in that case, there was no element of the exercise of police power, and what was there done amounted to invasion and destruction of property.

If the respondent's business does not constitute a nuisance so far as the owners of adjacent property are concerned, it follows that it would not constitute a nuisance with respect to the school district, conceding, without deciding, that the district would have a

right to maintain the action if the nuisance in fact existed.

The judgment will be affirmed.

PARKER, C. J., MACKINTOSH, HOLCOMB, and HOVEY, JJ., concur.